IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| OSCAR H. CHAVEZ, | § | |
| TDCJ #508978, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-05-1600 |
| | § | |
| DOUG DRETKE, Director, | § | |
| Texas Department of Criminal Justice - | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM AND ORDER

State inmate Oscar Humberto Chavez has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging a state court conviction. The respondent has filed a motion for summary judgment, arguing that Chavez is not entitled to federal habeas corpus relief because his petition is barred by the governing statute of limitations. Alternatively, the respondent argues that his claims are without merit. Chavez has filed a reply. After considering all of the pleadings, the state court records, and the applicable law, the Court grants the respondent's motion and dismisses this case for reasons set forth below.

## I.   BACKGROUND AND PROCEDURAL HISTORY

Because the statute of limitations is an issue in this case, a review of the background and procedural history is required. On August 31, 1988, a grand jury in Harris County, Texas, returned an indictment against Chavez in cause number 509109, charging him with aggravated sexual assault of a child younger than fourteen years of age. After Chavez

entered a plea of "no contest" to the charges, the 187th District Court of Harris County found him guilty on December 14, 1988, and withheld punishment pending the result of a pre-sentence investigation ("PSI").  According to the PSI report and other sworn accounts in the record, Chavez and a co-defendant grabbed the nine-year-old victim and another girl as they were leaving a convenience store and pulled them into a nearby house, where the victim was sexually assaulted by Chavez and another assailant identified as "Gabriel."  The victim, who knew Chavez, identified him as one of the two males who had assaulted her.  An affidavit from the investigating officer reported that at least four independent witnesses saw Chavez sexually assault the victim.  Three of these individuals then witnessed the same victim being sexually assaulted by Chavez' friend, who Chavez identifies as Gabriel Gallegos.  After considering the PSI report, the trial court sentenced Chavez on February 24, 1989 to serve forty-five years in prison.

Chavez did not appeal his conviction or sentence.  On August 24, 1989, Chavez filed a state habeas corpus application, alleging that had received ineffective assistance of counsel because his attorney did not advise him accurately about his eligibility for probation or about the earliest possible date he could be considered for parole.   The Texas Court of Criminal Appeals denied the application on September 19, 1990, without a written order, on findings made by the trial court.  *See Ex parte Chavez*, No. 20,771-01 (Tex. Crim. App.).

On August 28, 1995, Chavez filed a second state habeas application, alleging that he had received ineffective assistance of counsel because his attorney failed to advise him adequately about his eligibility for probation, meaning that his guilty plea was not voluntarily

entered.  Chavez complained further that his plea was not voluntarily and knowingly made because, as a non-citizen, the trial court failed to admonish him about the plea's consequences for his immigration status.  The Texas Court of Criminal Appeals denied the application without a written order on November 1, 1995.  *See Ex parte Chavez*, No. 20,771-02 (Tex. Crim. App.).

For the next six years, Chavez did nothing further to challenge his conviction.  Then, in a letter dated September 5, 2001, Chavez filed a motion with the trial court seeking the appointment of counsel for purposes of pursuing DNA testing to prove a claim of actual innocence.  The trial court granted the request and appointed counsel to represent Chavez.  On May 21, 2002, counsel for Chavez filed a motion for post-conviction DNA testing, which the trial court denied on July 3, 2002.  In doing so, the trial court found that any DNA evidence in Chavez' case had been destroyed pursuant to a court order in 1996, and that, even if such evidence was available for testing, Chavez' identity as the perpetrator was not in dispute.  Chavez' attorney filed an appeal from that decision, which a state intermediate appellate court dismissed for lack of jurisdiction.[1]   *See Chavez v. State*, 132 S.W.3d 509

---

[1]   While his attorney pursued an appeal, Chavez appears to have pursued his own course of action following the trial court's decision to deny his motion for DNA testing.  While he was still represented by counsel, Chavez filed a *pro se* motion for new trial on August 2, 2002.  When the trial court ignored his *pro se* submission, Chavez attempted to seek a writ of mandamus on February 18, 2003.  The Texas Court of Criminal Appeals denied him a writ of mandamus on November 10, 2004.  *See Ex parte Chavez*, No. 20,771-03.  Chavez allegedly filed a second *pro se* motion for DNA testing on June 10, 2004, which the trial court denied on June 25, 2004.  (Docket Entry No. 3, *Memorandum*, at 2).  His attempts to appeal were unsuccessful, however, and the state district court reportedly denied his request for a writ of mandamus on February 3, 2005.  (*See id.*).

(Tex. App. — Houston [1st Dist.] Feb. 19, 2004, no pet.) (noting that there is jurisdiction to review a trial court's decision to deny DNA testing, but not to consider a claim regarding destruction of evidence).  Chavez did not file a petition for discretionary review with the Texas Court of Criminal Appeals.

Thereafter, on February 21, 2005, Chavez filed a third state application for a writ of habeas corpus, challenging the trial court's initial decision to deny DNA testing on July 3, 2002 for the following reasons:  (1) he was denied forensic DNA testing because the state destroyed any DNA evidence; (2) the state withheld potentially favorable DNA evidence; and (3) he was denied effective assistance of counsel on appeal from the DNA proceeding. The Texas Court of Criminal Appeals denied Chavez' application on April 13, 2005, without a written order, on findings made by the trial court.  *See Ex parte Chavez*, No. 20,771-04.

Chavez filed the pending federal habeas corpus petition under 28 U.S.C. § 2254 on April 22, 2005.[2]  In that petition, Chavez raises the same claims presented in his third state habeas corpus application regarding his post-conviction motion for DNA testing.   The respondent argues that any challenge to Chavez' conviction is barred by the governing one-year statute of limitations.  Alternatively, the respondent argues that the claims made by

---

[2]     The Clerk's Office received the federal habeas corpus petition for filing on May 3, 2005, but the pleadings are post-marked April 22, 2005.  For statute of limitations purposes, courts in this circuit ordinarily treat the date a *pro se* prisoner deposits a federal habeas corpus petition in the mail as the filing date.  *See Fisher v. Johnson*, 174 F.3d 710, 712 n.8 (5th Cir. 1999) (citing *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998) (per curiam)), *cert. denied*, 531 U.S. 1164 (2001).

Chavez do not warrant federal habeas corpus relief.   Chavez disagrees. The parties'
contentions are discussed below under the governing standard of review.

## II.   STANDARD OF REVIEW

The respondent's motion for summary judgment is governed by Rule 56 of the Federal
Rules of Civil Procedure.  In deciding a motion for summary judgment under Rule 56, a
court must determine whether "the pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if any, show that there is no genuine issue
as to any material fact and that the moving party is entitled to judgment as a matter of law."
FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little
v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  A movant's burden is to
point out the absence of evidence supporting the nonmovant's case.  *Malacara v. Garber*,
353 F.3d 393, 404 (5th Cir. 2003) (citing *Celotex*, 477 U.S. at 323; *Stults v. Conoco, Inc.*,
76 F.3d 651, 656 (5th Cir. 1996)).  To survive summary judgment, the nonmovant must
submit or identify evidence in the record to show the existence of a genuine issue of material
fact as to each element of the cause of action.   *Id.* (citing *Celestine v. Petroleos de
Venezuella SA*, 266 F.3d 343, 349 (5th Cir. 2001)).

An issue is material if its resolution could affect the outcome of the action.
*Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.,* 290 F.3d 303, 310 (5th Cir.
2002) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).  In deciding
whether a fact issue has been created, the facts and the inferences to be drawn from them
must be reviewed in the light most favorable to the nonmoving party.  *Hotard v. State Farm*

*Fire & Cas. Co.,* 286 F.3d 814, 817 (5th Cir. 2002).   However, factual controversies are resolved in favor of the nonmovant "only when there is an actual controversy – that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir. 1999).

The petitioner proceeds *pro se* in this case.   Courts construe pleadings filed by *pro se* litigants under a less stringent standard than those drafted by attorneys.   *See Haines v. Kerner*, 404 U.S. 519 (1972); *see also Bledsue v. Johnson*, 188 F.3d 250, 255 (5th Cir. 1999) ("[I]n this circuit *pro se* habeas petitions are construed liberally and are not held to the same stringent and rigorous standards as are pleadings filed by lawyers.").   Pleadings filed by a *pro se* litigant are entitled to a liberal construction that affords all reasonable inferences which can be drawn from them.   *See Haines*, 404 U.S. at 521; *see also United States v. Pena*, 122 F.3d 3, 4 (5th Cir. 1997) (citing *Nerren v. Livingston Police Dept.*, 84 F.3d 469, 473 & n.16 (5th Cir. 1996)).   Nevertheless, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary judgment motion.   *See Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992).

## III.   ONE-YEAR STATUTE OF LIMITATIONS

According to the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), all federal habeas corpus petitions are subject to a one-year limitations period found in 28 U.S.C. § 2244(d).   The one-year

statute of limitations applies to all federal habeas corpus petitions filed after the AEDPA's effective date of April 24, 1996. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998). Because the pending petition was filed well after April 24, 1996, the one-year limitations period clearly applies. *See Hughes v. Dretke*, 412 F.3d 582, 588 (5th Cir. 2005).

The essence of the claims raised in Chavez' petition is that he is actually innocent, but that he was unable to prove it during his post-conviction DNA proceeding because the evidence was destroyed several years after his conviction became final. To the extent that Chavez challenges the validity of his state court conviction, the statute of limitations for federal habeas corpus review began to run at "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Chavez pleaded no contest on December 14, 1988, and he was convicted pursuant to a judgment entered on February 24, 1989. Because Chavez did not file an appeal, that judgment became final thirty days later. Habeas petitioners whose convictions became final before the AEDPA's effective date on April 24, 1996, were afforded a one-year grace period to file their claims for relief in federal court. *See United States v. Flores*, 135 F.3d 1000, 1004 (5th Cir. 1998), *cert. denied*, 525 U.S. 1091 (1999) (discussing a habeas corpus application filed under 28 U.S.C. § 2255). Therefore, Chavez had until April 24, 1997, to file his federal writ. *See Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999) (citing *Flanagan*, 154 F.3d at 201-02). Chavez' pending petition, filed on April 22, 2005, is late by nearly eight years and is therefore time-barred.

To the extent that Chavez challenges the results of his post-conviction DNA testing proceeding, the statute of limitations for those claims arguably began to run from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). The factual predicate for Chavez' allegation concerning the destruction of DNA evidence in his case became known no later than August 1, 2002, when Chavez received notice of the trial court's ruling on his motion. The factual predicate for Chavez' complaints about his appellate attorney's performance became known to him no later than February 19, 2004, when the intermediate appellate court issued its decision to dismiss his appeal. The statute of limitations for these claims expired, at the latest, one year later on August 1, 2003, and February 19, 2005, respectively. Chavez' pending federal habeas corpus petition, filed on April 22, 2005, is therefore untimely unless an exception applies.

A.      **Statutory Tolling**

Under 28 U.S.C. § 2244(d)(2), the time during which a "properly filed" application for state habeas corpus or other collateral review is pending shall not be counted toward the limitations period. *See Artuz v. Bennett*, 531 U.S. 4 (2000). The first two state habeas corpus applications filed by Chavez in 1989 and 1995, respectively, do not toll the prescriptive period because they were filed before the statute of limitations began to run. *See Ex parte Chavez*, Nos. 20,771-01 and 20,771-02.

Chavez filed a motion for a writ of mandamus on February 18, 2003, complaining about the trial court's failure to rule his *pro se* motion for new trial, among other things. The

8

Texas Court of Criminal Appeals denied his request for a writ of mandamus on November 10, 2004. *See Ex parte Chavez*, No. 20,771-03. The Fifth Circuit has held that an application for a writ of mandamus is not "other collateral review" as contemplated by 28 U.S.C. § 2244(d)(2). *Moore v. Cain*, 298 F.3d 361, 366-67 (5th Cir. 2002). Accordingly, the time during which Chavez' application for a writ of mandamus was pending does not count for purposes of statutory tolling.

Chavez filed a third state habeas corpus application on February 21, 2005, which the Texas Court of Criminal Appeals denied on April 13, 2005. *See Ex parte Chavez* No. 20,771-04. Because this application was filed after the prescriptive period had already expired, however, it does not toll the statute of limitations. *See Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000).

Chavez has not alleged that he was subject to state action that impeded him from filing his petition in a timely manner.[3] *See* 28 U.S.C. § 2244(d)(1)(B). Further, there is no showing of a newly recognized constitutional right upon which the petition is based; nor is there a factual predicate for the claims that could not have been discovered previously if the petitioner had acted with due diligence. *See* 28 U.S.C. § 2244(d)(1)(C), (D). Accordingly,

---

[3]     In his memorandum of law, Chavez argues that he is entitled to tolling from the dates that he executed his state court pleadings and placed them in the prison mail system. (Docket Entry No. 3, *Memorandum*, at 2-3). The Fifth Circuit has held, however, that the "mailbox rule" does not extend to the determination of filing dates for state post-conviction applications. *See Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999), *cert. denied*, 529 U.S. 1057 (2000). Instead, when a prisoner asserts that his ability to file a federal habeas petition has been affected by a state proceeding, courts examine whether the prisoner is entitled to equitable tolling. *Id.* Therefore, the Court will address further below whether any delays in the mail system are grounds for equitable tolling.

there is no other statutory basis to save the petitioner's late-filed claims.

**B.    Equitable Tolling**

Chavez contends that he has diligently pursued relief and that his petition should not be barred by the statute of limitations.  In response to the summary judgment motion, Chavez asserts that he is entitled to equitable tolling because of "factors external to his control." (Docket Entry No. 11, *Response*, at 4).  In his memorandum of law, Chavez points to delays in the mail system as the reason for his untimeliness.  (Docket Entry No. 3, *Memorandum*, at 2-3).  In particular, Chavez notes that he placed his third state habeas corpus application in the mail on February 7, 2005, but that it was not filed with the Harris County Clerk's Office until February 21, 2005.

The statute of limitations for federal habeas corpus review may be equitably tolled at the district court's discretion where "exceptional circumstances" are present.  *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999), *cert. denied*, 529 U.S. 1057 (2000); *Davis v. Johnson*, 158 F.3d 806, 810 (5th Cir. 1998), *cert. denied*, 526 U.S. 1074 (1999).   In that respect, equitable tolling is an extraordinary remedy that is only sparingly applied.  *See Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96 (1990).  The Supreme Court has noted that a habeas corpus petitioner seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way.  *See Pace v. DiGuglielmo*, — U.S. —, 125 S. Ct. 1807, 1814 (2005).  "A garden variety claim of excusable neglect does not support equitable tolling." *Coleman*, 184 F.3d at 402. The doctrine of equitable tolling "applies principally where the

10

plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." *Melancon v. Kaylo*, 259 F.3d 401, 407 (5th Cir. 2001) (quoting *Rashidi v. American President Lines*, 96 F.3d 124, 128 (5th Cir. 1996)).

In this case, Chavez asserts that he is "truly innocent" of the aggravated sexual assault charges lodged against him and that DNA testing would have supported this claim. (Docket Entry No. 3, Appendix J, *Affidavit of Oscar H. Chavez*). As noted above, Chavez entered a plea of no contest on December 14, 1988, and he was sentenced to forty-five years in prison on February 24, 1989. If Chavez believed that he was actually innocent, then these facts would have been apparent to him in 1988 when he entered his plea regardless of whether there was DNA evidence. Chavez filed state habeas corpus applications in 1989 and 1995, but neither application included a claim for actual innocence. Chavez offers no explanation for his failure to present a claim of actual innocence in either of these proceedings.

The record shows that Chavez waited more than ten years after his conviction became final to raise the issue of actual innocence. The Texas Legislature enacted the DNA testing statute in April of 2001. Chavez filed a motion requesting appointment of counsel in September of 2001, so that he could pursue DNA testing in support of a claim of actual innocence. The trial court appointed counsel for Chavez, who filed a motion for DNA testing on May 21, 2002. After the trial court denied the motion on July 3, 2002, and the appellate court dismissed his appeal for lack of jurisdiction on February 19, 2004, Chavez did not file a petition for discretionary review with the Texas Court of Criminal Appeals.

Chavez reportedly placed his third state habeas corpus application in the mail on February 7, 2005, and that it was filed on February 21, 2005.

Even if the Court were to award equitable tolling for delay in the mail system referenced by Chavez, from February 7, 2005, to February 21, 2005, it would make no difference. To the extent that Chavez now claims that he is actually innocent, he knew or should have known of the facts underlying his claim when he entered his plea in 1988. He did not begin to raise a claim of actual innocence until he sought DNA testing in 2001. This record demonstrates substantial delay on Chavez' part, and he offers no excuse for his failure to diligently pursue federal habeas relief during this time. Although Chavez proceeds *pro se*, his incarceration and ignorance of the law do not otherwise excuse his failure to file a timely petition and are not grounds for equitable tolling. *See Fisher v. Johnson*, 174 F.3d 710, 714 (5th Cir. 1999), *cert. denied*, 531 U.S. 1164 (2001); *see also Cousin*, 310 F.3d at 849 (noting that a petitioner's ignorance or mistake is insufficient to warrant equitable tolling); *Barrow v. New Orleans S.S. Ass'n*, 932 F.2d 473, 478 (5th Cir.1991) (finding that "lack of knowledge of the filing deadlines," "lack of representation," "unfamiliarity with the legal process," illiteracy, and "ignorance of legal rights" generally do not justify tolling).

In addition, Chavez' claim of actual innocence does not constitute an exceptional circumstance that would justify equitable tolling in this instance. Although Chavez argues that DNA evidence would have established his actual innocence, he fails to refute findings in the record showing that his identity as the perpetrator was established by the victim and by several other eye-witness accounts. Because Chavez has not shown himself to be actually

12

innocent, there is nothing in the petition that excuses his failure to timely file his petition. *See Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir. 2000), *cert. denied*, 531 U.S. 1035 (2000) (noting that claims of actual innocence are not a "rare and exceptional circumstance" which justifies equitable tolling of the statute of limitations given that many prisoners maintain they are actually innocent).

The Court is mindful of the effect a dismissal will have on the petitioner's ability to have his claims heard by a federal court.[4]  *See Felder*, 204 F.3d at 173.  However, the Fifth Circuit has emphasized that the "strict one-year limitations period" imposed by Congress for the filing of all habeas corpus petitions is "subject only to the narrowest of exceptions." *Fierro v. Cockrell*, 294 F.3d 674, 684 (5th Cir. 2002).  Given the petitioner's lack of diligence, the Court concludes that his circumstances are not among those "rare and exceptional" conditions which warrant deviation from the express rules that Congress has provided.  *See Felder*, 204 F.3d at 173.  Accordingly, equitable tolling will not save his late-filed claims. The Court therefore concludes that his pending federal habeas corpus petition is barred by the applicable one-year limitations period and that the respondent is entitled to summary judgment on this issue.  In addition, the respondent advances other alternative grounds to deny relief, each of which is considered briefly below.

## IV.   THE CLAIMS ARE WAIVED

As noted above, Chavez contends that he is entitled to federal habeas corpus relief on

---

[4]     For reasons discussed further below, however, the Court concludes that Chavez is not entitled to federal habeas corpus relief for alternative reasons.

the following grounds:  (1) he was denied forensic DNA testing because the state destroyed any DNA evidence; (2) the state withheld or suppressed potentially favorable DNA evidence; and (3) he was denied effective assistance of counsel on appeal from the DNA proceeding. The respondent notes that Chavez pled no contest in this case and admitted his guilt.  "Under Texas law, a plea of no contest, or nolo contendere, has the same legal effect in a criminal proceeding as a plea of guilty: 'Such a plea before a jury admits the existence of all facts necessary to establish guilt and constitutes a waiver of the appellant's [constitutional] complaint.'"  *Cook v. Lynaugh*, 821 F.2d 1072, 1075 (5th Cir. 1987) (quoting *Allen v. State*, 474 S.W.2d 480, 482 (Tex. Crim. App. 1972)); *see also Carter v. Collins*, 918 F.2d 1198, 1200 n.1 (5th Cir. 1990) (observing that a plea of nolo contendere is an admission of guilt, and therefore the law applicable to guilty-plea proceedings applies where a plea of no contest is entered).  The respondent contends therefore that all of Chavez' claims fail as a matter of law because they were waived by his valid guilty plea.

It is well established that criminal defendants have only a limited ability to challenge a conviction entered pursuant to a valid guilty plea:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.  He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann* [*v. Richardson*, 397 U.S. 759, 770 (1970) ].

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973).  A criminal defendant who pleads guilty

14

may challenge jurisdictional defects which dispute "the very power of the State to bring the defendant into court to answer the charge against him." *Blackledge v. Perry*, 417 U.S. 21, 30 (1974). Otherwise, "a guilty plea, intelligently and voluntarily made, bars the later assertion of constitutional challenges to the pretrial proceedings." *Lefkowitz v. Newsome*, 420 U.S. 283, 288 (1975); *see also Haynes v. Butler*, 825 F.2d 921, 924 (5th Cir. 1987) (explaining that, once a guilty plea is entered, any Sixth Amendment challenge is limited to the issues of voluntariness and the defendant's understanding of the nature of the charges brought against him and the consequences of his plea), *cert. denied*, 484 U.S. 1014 (1988); *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983) (holding that a voluntary guilty plea waives all non-jurisdictional defects, including claims for ineffective assistance of counsel, except where the alleged ineffectiveness bears upon the voluntariness of the guilty plea), *cert. denied*, 466 U.S. 906 (1984).

Chavez does not allege or otherwise show that his guilty plea was involuntarily and unknowingly entered. Under these circumstances, he has waived review of the non-jurisdictional claims that he asserts in his federal habeas corpus petition. Accordingly, federal habeas corpus relief is not warranted and the respondent is entitled to summary judgment on this issue. Even if not waived, Chavez does not show that he is entitled to relief under the standard governing federal habeas corpus review.

## V.  THE CLAIMS ARE WITHOUT MERIT

### A.  Federal Habeas Corpus Review Standards

The federal writ of habeas corpus is an extraordinary remedy, which shall not extend

to any prisoner unless he is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. §§ 2241(c)(3), 2254(a); *Brecht v. Abrahamson*, 507 U.S. 619, 633-34 (1993) (explaining that "the writ of habeas corpus has historically been regarded as an extraordinary remedy, a bulwark against convictions that violate fundamental fairness"). As noted previously, the pending federal habeas corpus petition is governed by the AEDPA. *See Lindh*, 521 U.S. at 336 (holding that the AEDPA applies to those habeas corpus petitions filed after its effective date of April 24, 1996).  Embodying the principles of federalism, comity, and finality of judgments, the AEDPA, codified as amended at 28 U.S.C. § 2254(d), "substantially restricts the scope of federal review of state criminal court proceedings." *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000), *cert. denied*, 532 U.S. 1067 (2001). Specifically, the AEDPA has "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Chavez' claims concerning his post-conviction DNA proceeding were raised on state habeas corpus review and rejected by the Texas Court of Criminal Appeals based on findings and conclusions made by the trial court.  *See Ex parte Chavez*, No. 20,771-04 (Tex. Crim. App. April 13, 2005).  As a matter of law, a denial of relief by the Court of Criminal Appeals serves as an adjudication on the merits of the claim.  *See Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir.) (citing *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997)), *cert. denied*, 531 U.S. 849 (2000); *see also Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir.

1999) (noting that, under Texas law, a denial of relief rather than a dismissal of the claim by the Court of Criminal Appeals disposes of the merits of a claim).  Accordingly, the federal habeas corpus standard of review, as amended by the AEDPA, applies to the petitioner's claims as long as they were adjudicated on the merits and not dismissed for procedural reasons.[5]  *See Haley v. Cockrell*, 306 F.3d 257, 263 (5th Cir. 2002) (citing *Valdez v. Cockrell*, 274 F.3d 941, 946-48 (5th Cir. 2001)); *see also Fisher v. Texas*, 169 F.3d 295, 300 (5th Cir. 1999) (concluding that when a state habeas corpus court rejects a petitioner's claim on procedural grounds, there has not been an "adjudication on the merits" as contemplated by the AEDPA).

The provisions of 28 U.S.C. § 2254(d), as amended by the AEDPA, set forth a "highly deferential standard for evaluating state-court rulings, . . . , which demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (internal citation omitted).  For claims adjudicated on the merits, the AEDPA's amendments provide that a petitioner is not entitled to relief unless the state court's adjudication:

1.    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[5]    Additionally, pre-AEDPA precedent forecloses habeas corpus relief if any of the following circumstances are present: (1) the claim is barred as a consequence of the petitioner's failure to comply with state procedural rules, *Coleman v. Thompson*, 501 U.S. 722 (1991); (2) the claim seeks retroactive application of a new rule of law to a conviction that was final before the rule was announced, *Teague v. Lane*, 489 U.S. 288 (1989); or (3) the claim asserts trial error that, although of constitutional magnitude, did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

2.      resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Courts are to review pure questions of law and mixed questions of law and fact under § 2254(d)(1).  *See Martin v. Cain*, 246 F.3d 471, 475 (5th Cir.), *cert. denied*, 534 U.S. 885 (2001).  Under the first ("contrary to") clause, a federal district court may grant habeas relief if the state court decided a case differently from how the United States Supreme Court decided a case on a set of materially indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Under the second ("unreasonable application") clause, a court may grant habeas relief if the state court correctly divined a legal principle from the Supreme Court's jurisprudence but misapplied that principle to the facts.  *See id*.

Section 2254(d)(2) governs pure questions of fact.  *See Moore v. Johnson*, 225 F.3d 495, 501, 504 (5th Cir. 2000). Under this subsection, federal courts must give deference to state court findings of fact unless they are based on an unreasonable interpretation of the evidence presented in the state court proceeding.  *See Brewer v. Dretke*, 410 F.3d 773, 775 (5th Cir. 2005) (citing *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000) (as modified on denial of rehearing)).  In addition, any factual findings made by the state court in deciding a petitioner's claims are presumed correct under 28 U.S.C. § 2254(e)(1), unless the petitioner rebuts those findings with "clear and convincing evidence to the contrary."  *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002).  Chavez makes no effort to demonstrate that he is entitled to federal habeas corpus relief under this standard.

B.      **Destruction or Suppression of DNA Evidence**

In two related grounds for relief, Chavez argues that he is entitled to federal habeas corpus relief because the state destroyed the evidence in his case in 1996, before he could file his motion for DNA testing.  Chavez argues that this destruction resulted in the suppression of DNA evidence which possibly could have established his innocence.  The state habeas corpus court rejected these claims, finding that Chavez failed to show that the state withheld or destroyed exculpatory evidence.  *See Ex parte Chavez*, No. 20,771-04 at 52.

In Texas, requests for forensic DNA testing of evidence containing biological material are governed by Chapter 64 of the Texas Code of Criminal Procedure.  Under that chapter, a state court may order post-conviction DNA testing if certain requirements are satisfied. TEX. CODE CRIM. PROC. ANN. art. 64.03(a)(1)(A),(B) (Vernon Supp. 2004-05). Those requirements include a finding that the evidence still exists in a condition making DNA testing possible and a finding that identity was or is an issue in the case.  *Id*.

In its order denying Chavez' motion for DNA testing, the trial court found that the evidence maintained in the case against Chavez (Cause No. 509109) was destroyed on October 31, 1996, pursuant to a court order.  (Clerk's Record at 57). The trial court further found that Chavez was not entitled to DNA testing because, according to the investigating officer, his identity as the perpetrator was never an issue:

> The Court finds, based on the credible affidavit of Norman Welsh, Harris County Sheriff's Office, that identity was not and is not an issue in this case as the complainant identified the defendant at the crime scene and four independent witnesses observed the offense and identified the defendant as the person who sexually assaulted the complainant.  The Court further finds that

because a second male named "Gabriel" also sexually assaulted the complainant, . . . [even] if a DNA test were possible and were performed, a negative test result would not exclude the defendant as a person who sexually assaulted the complainant.

(Clerk's Record at 57-58).  Therefore, the trial court concluded that, even if DNA evidence had been available, Chavez did not meet the requirements for DNA testing under Texas law. (Clerk's Record at 58).

The Supreme Court has held that, "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1988).  In so holding, the Supreme Court reasoned that the bad faith requirement "both limits the extent of the police's obligation to preserve evidence to reasonable bounds and confines it to that class of cases where the interests of justice most clearly require it, *i.e.*, those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant." *Id.* at 58.  In that regard, the exculpatory value of the evidence must be "apparent." *Id.* at 56 n.* (quoting *California v. Trombetta*, 467 U.S. 479, 489 (1984)).

The record indicates that the evidence in Chavez' case was destroyed pursuant to a court order in October of 1996, more than seven years after Chavez admitted his guilt by pleading no contest to the charges against him in 1988.  Under these circumstances, Chavez does not establish that the evidence was destroyed in bad faith.  Likewise, the findings of fact made by the trial court in connection with the motion for DNA testing show that Chavez'

20

identity as the perpetrator was never in doubt as at least four witnesses observed him sexually assault the victim.  (Clerk's Record, at 57-58).  Chavez has not met his burden to rebut these findings with clear and convincing evidence, and they are therefore entitled to the presumption of correctness found in 28 U.S.C. § 2254(e)(1).  Accordingly, Chavez does not demonstrate that the evidence was potentially exculpatory.

Absent a showing that material, exculpatory evidence was destroyed in bad faith, Chavez fails to demonstrate a constitutional violation.  *See Illinois v. Fisher*, 540 U.S. 544 (2004) (per curiam) (finding no due process violation where evidence was destroyed in accordance with normal procedures nearly eleven years after the defendant was charged and the evidence was not shown to be material or exculpatory, as opposed to merely "potentially useful").  Chavez has failed to show that the state court's decision to reject his claims was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent.  Chavez has also failed to show that the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented.  Thus, Chavez is not entitled to federal habeas corpus relief on his claims concerning the destruction or suppression of evidence.

### C.    Ineffective Assistance of Counsel

In his only other claim, Chavez complains that he received ineffective assistance of counsel during the appeal from his post-conviction DNA proceeding.  Specifically, Chavez argues that he was denied effective assistance of counsel in violation of the Sixth Amendment because his appellate attorney filed a "frivolous" brief.  Chavez cannot prevail

21

on this issue.

Because Chavez' claim concerns a state post-conviction proceeding, his claim of ineffective assistance is not cognizable under the AEDPA.  *See* 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."). Even before the enactment of the AEDPA, the Supreme Court recognized that "[t]here is no constitutional right to an attorney in state postconviction proceedings." *Coleman v. Thompson*, 501 U.S. 722, 752 (1991); *see also Murray v. Giarratano*, 492 U.S. 1, 4-13 (1989) (finding no constitutional right to appointed counsel in capital cases on state post-conviction review); *Pennsylvania v. Finley*, 481 U.S. 551, 555 ("Our cases establish that the right to appointed counsel extends to the first appeal of right, and no further.").  "Because a petitioner does not have a constitutional right to counsel in post-conviction habeas proceedings, it follows that a petitioner cannot claim ineffective assistance of counsel in such proceedings." *Irving v. Hargett*, 59 F.3d 23, 26 (5th Cir. 1995), *cert. denied*, 516 U.S. 1120 (1996); *see also In re Goff* 250 F.3d 273, 275 (5th Cir. 2001) ("The Supreme Court has explicitly held that there is no protected Sixth Amendment right to counsel in state post-conviction proceedings.").  Because his allegation is not cognizable on federal habeas corpus review, Chavez is not entitled to relief on this issue.[6]  Therefore, the respondent's motion for

---

[6]    Alternatively, the claim has no merit.  The state habeas corpus court rejected this claim, finding that Chavez failed to demonstrate a valid claim for ineffective assistance of counsel on appeal.  *See Ex parte Chavez*, No. 20,771-04 at 52-53.  To establish that appellate
(continued...)

summary judgment is granted.

## V.    CERTIFICATE OF APPEALABILITY

Because the habeas corpus petition filed in this case is governed by the AEDPA, codified as amended at 28 U.S.C. § 2253, a certificate of appealability is required before an appeal may proceed. *See Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir.) (noting that actions filed under either 28 U.S.C. § 2254 or § 2255 require a certificate of appealability), *cert. denied sub nom. Monroe v. Johnson*, 522 U.S. 1003 (1997). "This is a jurisdictional prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals . . . .'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 124 S. Ct. 2562, 2569 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Under the

_____

[6](...continued)

counsel's performance was deficient in the context of an appeal, a defendant must show that his attorney was objectively unreasonable in failing to find arguable issues to appeal — that is, that counsel unreasonably failed to discover non-frivolous issues and raise them. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). If he succeeds in establishing a deficiency, a petitioner then must demonstrate that he was actually prejudiced by his counsel's errors by showing a "reasonable probability" that, but for his counsel's deficient performance, "he would have prevailed on appeal." *Id.* A review of the appellate brief filed in Chavez' case shows that his counsel challenged the state's failure to preserve the DNA evidence. Chavez does not demonstrate that his attorney had any other viable claim to make under the circumstances or that the result of his appeal would have been any different.

controlling standard, this requires a petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336. Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). The Court concludes that jurists of reason would not debate whether any procedural ruling in this case was correct or whether the petitioner has stated a valid claim for the denial of a constitutional right. Accordingly, a certificate of appealability will not issue in this case.

## VI.   <u>CONCLUSION</u>

For these reasons, the Court **ORDERS** as follows:

1.      The respondent's motion for summary judgment (Docket Entry No. 9) is **GRANTED**.

2.      This federal habeas corpus proceeding is **DISMISSED** with prejudice.

3.      A certificate of appealability is **DENIED**.

The Clerk will provide a copy of this order to the parties.

SIGNED at Houston, Texas on **November 9, 2005**.

Nancy F. Atlas
United States District Judge